THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**In re:**

**ALEX RAHMI,**                                                      Case No. 3:12-bk-0200

  **Debtor.**                                                         Chapter 7

---

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE
SALE OF PROPERTY PURSUANT TO 11 U.S.C. § 363(b), (f),
AND (m), 11 U.S.C. § 105, AND FED. R. BANKR. P. 2002 AND 6004**

---

Martin P. Sheehan, Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Alex Rahmi (the "Debtor"), by counsel, hereby moves the Court for the entry of an order allowing the sale ("Sale") of all of the Debtor's right, title, and interest in the certain rights and interests described in the Bill of Sale and Assignment attached as *Exhibit 1* (the "Property") to Santander Bank, N. A., f/k/a Sovereign Bank (the "Bank" or "Purchaser"), creditor of the Debtor, pursuant to 11 U.S.C. §§ 363 and 105(a). In support of this motion (the "Sale Motion"), the Trustee respectfully states as follows:

### I. BACKGROUND

1. This is Mr. Rahmi's fourth personal bankruptcy case filed since January 2011. The other three bankruptcy cases have case numbers 11-bk-56, 11-bk-294, and 11-bk-1129. On February 21, 2012, he filed for bankruptcy relief under Chapter 11 [Docket No. 1]. The case was converted to Chapter 7 on May 16, 2014 [Docket No. 223]. The undersigned was appointed as trustee of the Debtor's bankruptcy case on May 20, 2014 [Docket No. 230].

2. The Bank's relationship with Mr. Rahmi has spanned many years, and it is very complicated to tell the complete story.

3. The Bank's lien on Mr. Rahmi's personal property arises from a judgment enforcement proceeding growing out of a $2,100,000.00 loan that Sovereign Bank (predecessor to Santander Bank, N.A.) ("Sovereign") made to Universal Enterprises of West Virginia, LLC ("Universal").

4. The Universal loan was secured by a Deed of Trust on property Universal owned – generally known as 1 Chevrolet Drive, Charles Town, West Virginia, 25414 ("Dealership Premises").

5. Alex Rahmi was the sole member of Universal (*i.e.,* a member of that limited liability company), and Mr. Rahmi guaranteed the Universal loan. Universal leased the Dealership Premises to Alex Chevrolet, Inc., which operated an automobile dealership, known as Alex Chevrolet.

6. On May 5, 2008, Universal stopped making its required monthly payments on its loan, and Sovereign proceeded to enforce its right to foreclose on its collateral and to collect the amounts due from Mr. Rahmi pursuant to his guaranty. As a result of Sovereign's notice of foreclosure on the Dealership Premises, Universal filed a Chapter 7 bankruptcy case on September 21, 2009, which was ultimately dismissed by this Court on November 17, 2009. Following a second notice of foreclosure, Universal filed a Chapter 11 case on December 16, 2009, in which the automatic stay was ultimately lifted on July 9, 2010 to permit Sovereign to foreclose on the Dealership Premises. *See* Case No. 3:09-bk-02862, (the "Universal Bankruptcy.")

7. Meanwhile, on August 19, 2009, the Circuit Court for Baltimore City, Eighth Judicial Circuit (Maryland) entered a Judgment in favor of Sovereign against Alex Rahmi for $3,321,461.55 (the "Sovereign Judgment") based on his guaranty of the Universal loan.

8. On November 17, 2009, the Bon-Air Partnership ("Bon-Air") filed a Chapter 7 bankruptcy petition in this Court – Case No. 3L09-bk-2621 (the "Bon-Air Bankruptcy"). Mr. Rahmi was a partner in the Bon-Air Partnership. On December 2, 2010, the Bank served a Suggestion of Personal Property on the Bon-Air trustee, perfecting the Bank's $1,700,000.00 judgment lien on the Debtor's distributive share of proceeds remaining from the Bon-Air estate. On October 30, 2013 the Bankruptcy Court held that the Bank had a perfected execution lien on the Debtor's distributive share of the Bon-Air proceeds and granted the Bank relief from the automatic stay of 11 U.S.C. § 362 to exercise its execution lien [Docket No. 145]. The Bankruptcy Court also held that, because the Bank's lien far exceeded Mr. Rahmi's distributive share of the Bon-Air proceeds, Alex Rahmi has no equity in his Bon-Air distributive share, entitling the Bank to receive any distribution payable to the Debtor on account of the Bank's execution lien. *See id*.

9. On January 14, 2010, Alex Chevrolet Inc. ("Alex Chevrolet") filed for Chapter 11 bankruptcy (the "Alex Chevrolet Bankruptcy"). *See* Case No. 3:10-bk-00061, Docket No. 1. The Debtor was President and 100% stockholder of Alex Chevrolet. The case was converted to Chapter 7 on November 4, 2010. *See* Case No. 3:10-bk-00061, Docket No. 194. While the trustee believes some administrable assets to exist for the benefit of creditors of the estate, the Debtor has no remaining equity in Alex Chevrolet.

10. The Sovereign Judgment was domesticated in West Virginia on July 29, 2010.

11. On September 2, 2010, as permitted by the July 9, 2010 order in the Universal case, Sovereign foreclosed on and sold the Dealership Premises in Jefferson County, West

3

Virginia, which reduced the balance of the Sovereign Judgment to $1,336,425.56 (as of September 2, 2010), which, as of September 1, 2014, had grown to an amount in excess of $1,800,000.00. Once the Bank foreclosed upon Universal's only asset, Universal moved to dismiss the case. *See* Case No. 3:09-bk-02862, Docket No. 95. The Bankruptcy Court dismissed Universal's petition and closed the Universal Bankruptcy case on October 18, 2010. *See* Case No. 3:09-bk-02862, Docket No. 103.

12. The September 2, 2010 foreclosure has been asserted by Mr. Rahmi to have involved "foreclosure fraud" and "deficiency judgment abuse" [*see* Case No. 3:09-bk-02862, Doc. 107] and, notwithstanding the merits or lack of merits of these allegations, the statute of limitations for that kind of claim is two years and had expired by September 2, 2012.

13. As for the merits, Mr. Rahmi's foreclosure fraud and deficiency judgment abuse claims have been previously litigated and debunked in both the West Virginia courts and in Federal Court.

14. On May 13, 2011, Mr. Rahmi requested a preliminary injunction from the Circuit Court of Jefferson County, West Virginia, to prevent Sovereign from collecting the Bon-Air Proceeds from the Bon-Air Trustee. The primary basis for Mr. Rahmi's injunction request was his claim that Sovereign had committed foreclosure fraud during the sale of the Dealership Premises. The Circuit Court denied Mr. Rahmi's injunction request by Order entered on August 30, 2011, holding as follows:

>    (a) "Sovereign acquired a perfected lien in all of Mr. Rahmi's personal property located in Jefferson County by delivery of a Writ of Execution to the Sheriff of Jefferson County."
>
>    (b) "Taking all the facts and evidence into consideration, the Court finds that the Universal foreclosure sale was regular and proper and that the price obtained was close to the market value of the real estate and does not shock the conscience or support a claim of fraud."

4

15. The West Virginia Supreme Court of Appeals affirmed that decision by Memorandum Decision entered on May 3, 2013 [*see* Docket No. 135-1, Ex. G, pp. 30-34].

16. Seemingly undeterred by the state court decision, or perhaps in spite of it, Mr. Rahmi filed a substantially identical complaint in the United States District Court for the Northern District of West Virginia on August 31, 2012 -- Case No. 12-cv-87; and on February 1, 2013, the District Court dismissed **with prejudice** Mr. Rahmi's abuse of process and foreclosure fraud claims pursuant to Fed. R. Civ. P. 12(b)(6) [*see* Docket No. 135-1, Ex. H, pp. 35-42].

17. Thus, (i) the statute of limitations on Mr. Rahmi's claims against Santander has run and (ii) Mr. Rahmi's claims have been determined by two final orders -- one from the West Virginia Supreme Court and one by the United States District Court for the Northern District of West Virginia -- to have no merit. Nevertheless, Mr. Rahmi keeps asserting them against Santander and its counsel.

18. Santander is willing to purchase these worthless claims from the Trustee to avoid future legal fees that might result from Mr. Rahmi's continuing assertion of these worthless claims.

19. Santander is also willing to purchase the Debtor's worthless equity interests in three other entities that are also debtors in the district (Bon-Air, Universal, and Alex Chevrolet), to prevent those entities from filing frivolous and worthless lawsuits against Santander for the same "foreclosure fraud" and "deficiency judgment abuse" and "abuse of process" claims asserted against Santander by Mr. Rahmi and debunked by the West Virginia Supreme Court of Appeals and the United States District Court for the Northern District of West Virginia. Again, any applicable statute of limitations has expired.

## II. JURISDICTION

20. The Bankruptcy Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).

## III. TERMS OF THE PROPOSED SALE

21. Property.  The Trustee wishes to sell and the Bank wishes to purchase the following Property:

   a. Any and all claims, allegations, and causes of action held by the Debtor against (i) the Bank; (ii) the Bank's counsel, including, but not limited to, Jackson Kelly PLLC and its lawyers; and (iii) the Bank's officers, directors, employees, or other representatives, relating in any way to (i) Alex Rahmi's Bankruptcy; (ii) the Bon-Air Bankruptcy; (iii) the Universal Bankruptcy; (iv) the Alex Chevrolet Bankruptcy; and/or (v) any actions or inactions taken by the Bank to assert and pursue its interests in those proceedings, including, but not limited to, the filing of any claims or suggestions of personal property, the execution of any liens, the foreclosures of any property, or entry into any settlement agreements.

   b. All residual equity interests the Debtor may hold, if any, in (i) the Bon-Air Bankruptcy, (ii) the Universal Bankruptcy, and (iii) the Alex Chevrolet Bankruptcy.

22. Purchase Price.  In consideration for the Property, the Bank will pay Three Thousand and 00/100 DOLLARS ($3,000.00) to the Trustee to be held as an asset of the Debtor's bankruptcy estate (the "Purchase Price").

23. Best Interests of the Estate.  Given the unique nature of the rights and interests comprising the Property, the Bank is the only potential purchaser.  The Property has no value, save its value to the Bank to protect against the potential risk of continued frivolous litigation

brought against it by the Debtor. The Trustee believes that the Purchase Price is fair and reasonable. The Trustee has determined that the best interests of the estate, its creditors and parties in interest would be served by the Sale of the Property to Purchaser, upon the terms set forth herein.

24. <u>Closing.</u> Closing will take place no later than thirty (30) days after entry of an order of this Court approving this Sale Motion ("<u>Sale Order</u>"), a proposed copy of which is attached as *Exhibit 2*.

25. <u>Liens and Encumbrances.</u> No liens or other encumbrances exist on the Property. Thus, the Property will be sold free and clear of all liens, claims, and encumbrances.

## IV. THE SALE

26. The transfer of the Property to Purchaser (the "<u>Sale</u>") represents an arms' length transaction and has been negotiated in good faith between Purchaser and the Trustee. The Trustee moves for the entry of an order approving the Sale as described in the Bill of Sale and Assignment and this motion and finding that Purchaser, as transferee of the Property, is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the full protections of 11 U.S.C. § 363(m). The Trustee has proceeded in good faith in all respects in connection with this proceeding in that:

    a. Purchaser recognized that that Trustee was free to deal with any other party interested in acquiring the Property;

    b. All payments to be made by Purchaser in connection with the Sale have been disclosed; and

    c. Purchaser has not violated 11 U.S.C. § 363(n) by any action or inaction.

27.     The Trustee moves for the entry of an order that, in the absence of a stay of the Court's Order approving the Sale, Purchaser will be entitled to the protections of § 363(m) if the Sale Order or an authorization contained therein is reversed or modified on appeal.

28.     The Trustee further moves for the entry of an order finding that he has established sound business justifications in support of the Sale and a determination that the Purchase Price presents the best opportunity for Debtor's estate to realize the highest distribution possible to all creditors; that the Purchase Price, as approved herein, is the highest and best offer for the Property considering the unique circumstances at play in this transaction; that the Purchase Price constitutes full and adequate consideration and reasonably equivalent value for the Property; and that the transfer of the Property on the Closing to Purchaser for the Purchase Price is in the best interest of Debtor's estate, the Debtor's creditors, and all parties in interest.

## V.  AUTHORIZING THE SALE OF THE PROPERTY

29.     The Trustee, pursuant to 11 U.S.C. § 363(f) and this Court's general equitable powers under 11 U.S.C. § 105(a), moves for an Order that upon the Closing of the Sale, Purchaser will take title to and possession of the Property and that the transfer of the Property will be free and clear of any and all liens, claims, liabilities, interests, and encumbrances whatsoever, whether contingent, unliquidated, unmatured, or otherwise, and whether of or against the Debtor, Purchaser, the bankruptcy estate, or the Property, including, without limitation: (a) any mortgages, deeds of trust, unrecorded claims in or against real estate, security interests, liens, or encumbrances of any kind; (b) any demands or claims of creditors of, or claimants against, the Debtor; (c) any interests of shareholders or other interests in the Debtor; and (d) any person claiming through, by, or on behalf of the Debtor, whether such claim, demand, lien, or interest be direct or indirect, known or unknown, or claiming that Purchaser is a successor, successor-in-interest, or pursuant to any other theory including the successor

liabilities. All other such liens, claims, liabilities, interests, and encumbrances as set forth above will attach solely to the proceeds of the Sale with the same validity and priority as they attached to the applicable Property.

30. The Trustee further moves for the entry of an order finding that Purchaser shall not have any liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Property. Without limiting the generality of the foregoing, Purchaser shall not be liable for any claims, liabilities, or encumbrances against the Debtor or any of his predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing.

31. The Trustee also moves for the entry of an order that, effective on the Closing Date, all persons and entities, to the extent allowed by law, are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against Purchaser, its successor and assigns, or the Property, based upon or with respect to any interest, claim, and liability of which the sale of the Property is free and clear under the terms of the Sale.

32. The Trustee further moves for the entry of an order that at the Closing the Trustee will sell, transfer, assign, and convey to Purchaser and/or their assigns all of the Trustee's rights, title, and interest in, to and under the Property; and that the Trustee is authorized, empowered, and hereby directed to deliver the Bill of Sale and Assignment attached as *Exhibit I* and any other such documentation that may be necessary or requested by Purchaser to evidence the transfers required herein.

## VI. RELIEF REQUESTED

33. That the Clerk's Office issue a notice to all interested parties of the filing of the Motion to Sell pursuant to Fed. R. Bankr. P. 2002(a)(2), (c)(1), (k) and 6004(a).

34. That the Court enter an Order, in the form attached to this motion, which:

　　a. Approves the Sale as described herein and in the Bill of Sale and Assignment;

　　b. Authorizes the Trustee to sell the Property free and clear of all liens, claims, encumbrances, and interests pursuant to 11 U.S.C. §§ 105 and 363;

　　c. Approves the Sale of the Property pursuant to 11 U.S.C. § 363(b), (f), (h), (m) and Fed. R. Bankr. P. 6004;

　　d. Authorizes the Trustee to hold the Sale proceeds pending further order of the Court.

　　e. Waives the fourteen (14)-day stay of the order approving the Sale under Fed. R. Bankr. P. 6004(h); and

　　f. Grants such other relief that the Court deems just and proper.

Dated the 2nd day of January, 2015.

　　　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　MARTIN P. SHEEHAN, Trustee

/s/ Martin P. Sheehan
Martin P. Sheehan, Trustee (WV Bar #4812)
Sheehan & Nugent, P.L.L.C.
41 Fifteenth Street
Wheeling, West Virginia 26003
Telephone: (304) 232-1064

## **CERTIFICATE OF SERVICE**

I, Martin P. Sheehan, do hereby certify that service of the **TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE SALE OF PROPERTY PURSUANT TO 11 U.S.C. § 363(b), (f), AND (m), 11 U.S.C. § 105, AND FED. R. BANKR. P. 2002 AND 6004** was made by ECF filing with this Court and by United States Mail on this 2nd day of January, 2015, as follows:

**Via ECF Filing:**

- Helen C. Altmeyer        helen.altmeyer@usdoj.gov, janet.evick@usdoj.gov; susan.collins@usdoj.gov
- Christopher R. Arthur    chris.arthur@steptoe-johnson.com
- Mark Alan Binstock       mbinstock@paleyrothman.com
- Stephen Randolph Brooks  sbrooks@fsblaw.com
- W. Scott Campbell        wcampbell@siwpc.com, rjones@siwpc.com; ecfwv1@siwpc.com; ecfwv2@siwpc.com; ecfwv3@siwpc.com; mevans@siwpc.com; kfisher@siwpc.com
- Fabio Crichigno          fcrichigno@siwpc.com, ecfwv1@siwpc.com; ecfwv2@siwpc.com; ecfwv3@siwpc.com; wcampbell@siwpc.com; dvarney@siwpc.com;pjohnson@siwpc.com;kfisher@siwpc.com;mevans@siwpc.com
- Sarah C. Ellis           sarah.ellis@steptoe-johnson.com
- Kenneth S. Jannette      advnotices@w-legal.com
- Douglas A. Kilmer        douglas.a.kilmer@usdoj.gov
- Michael R. Proctor       michael.proctor@dinslaw.com
- Martin P. Sheehan        sheehanparalegal@wvdsl.net, wv05@ecfcbis.com; sheehanassistant@wvdsl.net
- Martin P. Sheehan        sheehanparalegal@wvdsl.net, wv05@ecfcbis.com; sheehanassistant@wvdsl.net
- Arthur M. Standish       art.standish@steptoe-johnson.com
- David M. Thomas          david.thomas@dinslaw.com, gatha.mccauley@dinslaw.com
- United States Trustee    ustpregion04.ct.ecf@usdoj.gov
- Debra A. Wertman         debra.a.wertman@usdoj.gov

**Via United States Mail:**

Alex Rahmi                           Betsy C. Jividen
638 Marlow Road                      U.S. Attorney's Office
Charles Town, WV  25414              Post Office Box 591
                                     Wheeling, WV  26003


                                         /s/ Martin P. Sheehan
                                         Martin P. Sheehan, Trustee

11